UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILDRED WILLIAMS,
*Mother of Earvin G. Johnson*,
EARVIN G. JOHNSON,   CASE NO. 11-cv-15701

    *Plaintiff*,   DISTRICT JUDGE BERNARD FRIEDMAN
                             MAGISTRATE JUDGE CHARLES BINDER
v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff[2] is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.   REPORT

#### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] Unless otherwise stated, "Plaintiff" will refer to Earvin Johnson.

Commissioner's decision denying Plaintiff's claims for Supplemental Security Income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 19.)

Plaintiff was 29 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 13 at 21, 541.) Plaintiff's employment history includes work as a bus boy for one year and a janitor for eight months. (Tr. at 117.) Based on felony convictions for unlawful driving away of an automobile, carrying a concealed weapon, and receiving and concealing stolen property, Plaintiff spent over two years in prison in 1999 and between 2004 and 2006, and was on probation between April 2009 and April 2012. (Tr. at 94-95.) Since Plaintiff was not incarcerated from the alleged onset date forward, his incarceration does not affect his eligibility for benefits. 42 U.S.C. § 402(x)(1)(A).

Plaintiff filed the instant claim on January 17, 2007, alleging that he became unable to work on December 25, 2006. (Tr. at 90.) The claim was denied at the initial administrative stages. (Tr. at 34-36.) In denying Plaintiff's claims, the Commissioner considered other unspecified arthropathies and affective disorders as possible bases for disability. (*Id.*) On August 13, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Robert Senander. (Tr. at 21-33.) A supplemental hearing was held before ALJ Joel G. Fina on March 16, 2010, who considered the application for benefits *de novo*. (Tr. at 541-68.) In a decision dated December 2, 2010, ALJ Fina found that Plaintiff was not disabled. (Tr. at 7-16.) Plaintiff requested a review of this decision on August 20, 2010. (Tr. at 4-6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, on November 3, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On December 20, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.  Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 17, 2007, the application date. (Tr. at 12.) At step two, the ALJ found that Plaintiff's mood disorder secondary to traumatic brain injury, status post traumatic brain injury secondary to motor vehicle accident on December 25, 2006, and osteoarthritis were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found that there was no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff was not able to perform his past relevant work as a bus boy or janitor. (Tr. at 14.) At step five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work, i.e., that he should "never climb ladders, ropes or scaffolds; never crawl; frequent reaching; frequent handling of objects; frequent fingering; no occupations that require complex written or verbal communication; and work limited to simple, routine and

repetitive tasks but without specifications as to the number of steps required to complete the task." (Tr. at 13-14.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated on various occasions at the Detroit Receiving Hospital between 2001 and 2006 (Tr. at 158-70) and at Henry Ford Health and Hospital in 2006 and 2007. (Tr. at 171-268, 435-536.) Plaintiff was treated for conditions such as a human bite on his right thumb incurred during a fight with his girlfriend, depression (Tr. at 162-64), being "struck in the face with an unknown object (Tr. at 166-67), and fractures of his right lower extremity due to an automobile accident in March 2006. (Tr. at 169-70.)

Plaintiff was involved in and treated for injuries resulting from a motor vehicle accident on December 25, 2006, where he "was driving a car while heavily intoxicated" and "hit 3 parked cars prior to stopping." (Tr. at 265.) A CT scan of Plaintiff's head, cervical and thoracic spines taken on December 25, 2006, showed past nasal and mandible fractures, "soft tissue swelling on the midline frontal scalp . . . and hyperdenisty within the scalp consistent with acute hemorrhage[,]" "[n]o acute process of the thoracic or lumbar spine," and a follow-up CT of the head to "reevaluate the intraparenchymal contusions" was recommended. (Tr. at 177-79.) An EEG taken on December 25, 2006, and December 28, 2006, showed "[s]inus rhythm with occasional Premature ventricular complexes," but was "otherwise normal." (Tr. at 173-75.)

On December 30, 2006, another CT scan showed "tiny right cortical hemorrhage[,]" a "[s]mall amount subarachnoid and intraventricular hemorrhage without hydrocephalus" and "tiny left parietal subdural hematoma which appear smaller when compared to previous head CT." (Tr. at 191.) Plaintiff's mandibular fracture was surgically repaired on January 3, 2007. (Tr. at 223-24.) As to his closed head injury, by January 24, 2007, it was noted that Plaintiff's cranial nerves were all "normal," that he didn't "have any focal motor deficits[,]" that he had "done very well from his injury," and that the doctor did "not need to see him back unless there is a problem." (Tr. at 229.)

On January 25, 2007, it was noted that, as to his mandibular surgery, Plaintiff was "making good process towards return to normal." (Tr. at 230.) Plaintiff continued to be treated at the Lakeland Neuro Care Center from January through February of 2007. (Tr. at 269-336.) Plaintiff was discharged from physical and occupational therapies on February 8, 2007, because "goals [were] achieved" and it was noted that Plaintiff did not require any further physical therapy. (Tr. at 275-76.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") by S. Rastogi, M.D., psychiatrist, on March 26, 2007, and was diagnosed with mood disorder, secondary to traumatic brain injury, and past history of alcohol and substance abuse. (Tr. at 344.) Plaintiff's status post traumatic brain injury secondary to automobile accident, lumbosacral pain, history of jaw fracture and pain were noted, Plaintiff was assessed a GAF score of 50, and was given a "guarded" prognosis. (*Id.*)

On March 27, 2007, Plaintiff was also examined at the request of DDS by E. Montasir, M.D., who found that Plaintiff's "[f]ine and gross dexterity" was intact, that Plaintiff was "not taking any medications other than Tylenol for headaches[,]" that Plaintiff had "no joint deformity, subluxation, contracture or instability[,] . . . no injuries to his back, no muscle atrophy[,] . . . [that] grip and pinch strength were satisfactory . . . [that Plaintiff] ambulated freely . . . [and that Plaintiff had] no muscle atrophy and no neurological disorganization." (*Id.*) Therefore, Dr. Mantasir concluded that a "[g]eneral neurological evaluation showed no functional loss." (Tr. at 350.)

A Physical Residual Functional Capacity ("RFC") Assessment completed by Tariq Mahmood, M.D., on April 4, 2007, concluded that Plaintiff was able to occasionally lift 50 pounds, frequently lift 25 pounds, sit for six hours in an 8-hour workday, and was unlimited in his ability to push or pull. (Tr. at 361.) There were no postural, manipulative, visual, communicative or environmental limitations established. (Tr. at 363-64.)

A Psychiatric Review Technique ("PRT") was completed by James Tripp, Ed.D., on April 5, 2007, which diagnosed affective disorders and personality disorders, i.e., mood disorder due to

8

traumatic brain injury. (Tr. at 369, 372, 377.) Dr. Tripp assessed that Plaintiff's condition resulted in no restrictions as to activities of daily living or in maintaining social functioning, and that Plaintiff was only mildly limited in maintaining concentration, persistence and pace. (Tr. at 379.)

Plaintiff was referred by "Operation Get Down" to Detroit Central City Community Mental Health in June 2009 and was referred for group therapy for "improved coping skills, increased social skills, and increased social networking." (Tr. at 396, 405.)

In his Function Report, Plaintiff indicated that he does not have any problems with personal care and does not need reminders, but that he does "nothing" all day. (Tr. at 132-35.) However, Plaintiff also indicated that he enjoys "watching movies" and that he visits "baby mom's" "every pay" at their home. (Tr. at 136.) Plaintiff stated that he is "not good" at following written instructions but that he is "good" at following spoken instructions. (Tr. at 137.)

At the supplemental hearing held on March 16, 2010 (Tr. at 541-68,) the ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who:

> is able to lift up to fifty pounds occasionally, lift or carry up twenty-five pounds frequently and medium work as defined by the regulations. This person's work would be limited to simple, routine and repetitive tasks without specifying the number of steps required to complete the task.

(Tr. at 564.) The VE responded that such a person could perform Plaintiff's past work and 2,800 food prep jobs, 1,700 dishwasher jobs and 500 laundry worker jobs in the southeast quadrant of Michigan. (Tr. at 564-65.) The ALj then asked the VE to assume a person with Plaintiff's background who:

> is able to lift up to twenty pounds occasionally, lift or carry up to ten pounds frequently and light work as defined by the regulations, this person would never climb ladders, ropes or scaffolds, never crawl. This person could frequently reach, handle objects meaning gross manipulations and finger, meaning fine manipulation of items much smaller than the size of a paper clip. This person will be limited to occupations that do not require complex written or verbal communications. This person's work would be limited to simple, routine and repetitive tasks without specifying the number of steps required to complete the task.

(Tr. at 565-66.) The VE responded that such a person could perform the 500 mail clerk positions, 1,900 food prep positions and 1,700 janitorial positions at the light, unskilled level. (Tr. at 566.)

9

The ALJ also asked whether such a person could perform jobs at the sedentary level and the VE responded he could perform the 900 receptionist, 1,800 general office worker and 300 order clerk jobs available at the sedentary, unskilled level available in the southeast quadrant of Michigan. (Tr. at 566.) The ALJ asked and the VE responded that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 567.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he retained the residual functional capacity to perform a limited range of light work, i.e., that he should "never climb ladders, ropes or scaffolds; never crawl; frequent reaching; frequent handling of objects; frequent fingering; no occupations that require complex written or verbal communication; and work limited to simple, routine and repetitive tasks but without specifications as to the number of steps required to complete the task." (Tr. at 13-14.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial

10

evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

I suggest that substantial evidence supports the ALJ's findings. Although Plaintiff suffered serious injuries in the 2006 motor vehicle accident, his fractures were repaired and progressed to near normal (Tr. at 223-24, 230) and, as to his closed head injury, by January 24, 2007, it was noted that Plaintiff's cranial nerves were all "normal," that he didn't "have any focal motor deficits[,]" that he had "done very well from his injury," and that the doctor did "not need to see him back unless there [was] a problem." (Tr. at 229.) Plaintiff was discharged from physical and occupational therapies on February 8, 2007, because "goals [were] achieved," and it was noted that Plaintiff did not require any further physical therapy. (Tr. at 275-76.) On March 27, 2007, Dr. Montasir found that Plaintiff's "[f]ine and gross dexterity" were intact, that Plaintiff was "not taking any medications other than Tylenol for headaches[,]" that Plaintiff had "no joint deformity, subluxation, contracture or instability[,] . . . no injuries to his back, no muscle atrophy[,] . . . [that] grip and pinch strength were satisfactory . . . [that Plaintiff] ambulated freely . . . [and that Plaintiff had] no muscle atrophy and no neurological disorganization." (*Id.*) Therefore, Dr. Mantasir concluded that a "[g]eneral neurological evaluation showed no functional loss." (Tr. at 350.)

Although Plaintiff was diagnosed with affective disorders when examined at the request of DDS, Plaintiff was not regularly treated for mental health issues, and when he was treated, his treatment consisted only of prescription medication and one round of short-term group therapy. (Tr. at 344, 396, 405.) Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). Furthermore, Dr. Tripp assessed that Plaintiff's mental health condition resulted in no restrictions as to activities of daily living or in maintaining social functioning, and that Plaintiff was only mildly limited in maintaining concentration, persistence and pace. (Tr. at 379.)

In addition, the ALJ's hypothetical incorporated the only objective medical evidence as to physical and mental limitations i.e., the Physical RFC Assessment and the PRT. (Tr. at 361-64, 369-79.) Finally, I suggest that the ALJ's RFC findings were in harmony with the objective record medical evidence and Plaintiff's own statements that he does not have any problems with personal care, does not need reminders, that he enjoys "watching movies[,]" he visits "baby mom's" at their home, and that he is "good" at following spoken instructions. (Tr. at 132-37.) *See Griffeth*, 217 F. App'x at 429; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore suggest that substantial evidence supports the ALJ's findings that Plaintiff is not disabled.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 8, 2013

s/ Charles E Binder
CHARLES E. BINDER
United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and the following non-ECF participants: Earvin G. Johnson and Mildred Williams, 202 Beresford, Highland Park, MI 48203.

Date: January 8, 2013     By     s/Patricia T. Morris
                                  Law Clerk to Magistrate Judge Binder